## PRESIDENT, DIRECTORS, &c. OF THE AMERICAN BANK *vs.* JOHN S. JENNESS & others.

The indorser of a note negotiated after it is overdue is a competent witness to prove that it was paid before it was so negotiated.

The payees of a note, made payable on demand, indorsed it to a bank as collateral security, and the makers paid the amount of the note to the payees while it was thus in the bank, and took their receipt, acknowledging payment thereof, and promising " to give it up when called for." The makers did not call for it until after the failure of the payees, who had in the mean time, and more than eight months after the date of the note, transferred it to another bank : *Held*, that a jury would not be warranted, by the terms of the receipt, and the delay of the makers to call for the note, to infer that the makers intended to authorize or permit the payees to reissue it. Therefore *held also*, that the latter bank could not recover against the makers in an action on the note.

THIS case came before the court on the report of the evidence at the trial before *Morton*, J. at the November term, 1839. The facts sufficiently appear in the opinion delivered by

PUTNAM, J. This is an action of assumpsit by the indorsees against the makers of a promissory note, payable on demand. The note came into the hands of the plaintiffs eight months and twelve days after it was made. The defence is, that the note was paid by the makers to the payees before it was negotiated to the plaintiffs.

By the agreement of the parties, the case is to be considered by us just as it would be if there had been a verdict for the plaintiffs ; and if the evidence in the case was competent, and sufficient to maintain such verdict, judgment is to be rendered for the plaintiffs. If not, the plaintiffs are to become nonsuit.

The defendants contend that the note was overdue when it came into the plaintiffs' hands. In *Field* v. *Nickerson*, 13 Mass. 131, the demand on the maker of a note payable on

demand, and the notice to the indorser, were two hundred and forty-five days after the date of the note — nearly eight months — and were held not to be within a reasonable time. In the case at bar, the note came into the plaintiffs' hands two hundred and fifty-six days after it was dated, which was a few days over eight months from its date. In *Thompson* v. *Hale*, 6 Pick. 259, a note payable on demand, which was indorsed to the plaintiff after six months from its date, was treated as a note then overdue. The note now in suit, as we think, was overdue wnen it came into the hands of the plaintiffs. The defendants, therefore, have a right to make the same defence against the plaintiffs, which they could make if the action were brought in the name of the payees.

Was the testimony of one of the indorsers, which was introduced by the defendants, competent evidence to prove payment ? We think that question should now be considered as settled in the affirmative. The objection to the witness was not on the ground that he was interested, but because he was an indorser and party to the note. But a party to a note, who is not interested, is a competent witness to prove payment, on any other matter of defence not affecting the original validity of the note. *Van Schaack* v. *Stafford*, 12 Pick. 567. *Thayer* v. *Crossman* 1 Met. 416. Then it comes to the simple question, whether a jury would be warranted in giving a verdict for the plaintiffs, upon the evidence.

The note was produced by the plaintiffs, and the defendants admitted their signature. The indorsement was proved by Grant, one of the payees. The defendants produced a receipt in these words : " Boston, Feb. 21, 1837. Messrs. Jenness, Gage & Moody having this day paid to us their note, and interest, of July, 1836, on demand, we promise to give it up when called for. Amount $4000. Grant, Seaver & Co." It was testified by Grant, that the note was at that time in the hands of the Globe Bank, as collateral security for money then due to that bank from Grant, Seaver & Co. ; and that they gave that receipt to the defendants, expecting to settle it in a few days. At that time, the defendants, on settlement, owed Grant, Seaver

& Co. a balance of $ 19,000. And Grant testified, that " in the settlement, it was meant to give up to the defendants the notes constituting the $ 19,000 ; included in which sum was the note now in suit, which was then in the Globe Bank." But he also testified, that on the 24th of March, 1837, this note, with other collateral security, was taken from the Globe Bank, and was, on the next day, given to the plaintiffs, with a draft of $ 1500, as collateral security for a note of Grant, Seaver & Co. to the plaintiffs, of March 4th, at six months, for $ 5000, and that note was paid and taken up, in a general settlement with the plaintiffs ; on which Grant, Seaver & Co. gave their note for $ 199,000 due to the plaintiffs.

Grant testified, that he passed the note now in question to the plaintiffs ; that he knew he was passing it ; that it did not occur to him that it had been paid, though he knew it, and had marked it so in his memorandum book.

Grant, Seaver & Co. failed on the 23d of April, 1837, and Grant informed the plaintiffs, within two days of that time, that this note had been paid. He testified, that eighteen months after their failure, when he was soliciting an extension, this note was put down, in the schedule of the property of the firm, at $ 2000 ; and that the defendants, then and ever since, were in good credit.

The plaintiffs contend that they have a right to recover, on several grounds : That the defendants have permitted Grant, Seaver & Co. to retain this note, and use it as their property, either by exhibiting it as part of their assets, or reissuing it, as they might think proper : That if they had inquired, and the receipt had been produced to them, it would rather have confirmed these hypotheses than have proved that it was to be delivered up to the defendants as a paid note. It was "to be given up when called for ;" and the defendants, although next door neighbors to Grant, Seaver & Co., never called for it : That the defendants, therefore, should be considered as voluntarily permitting the payees to retain it for some or any purpose which they might think beneficial.

It is true that Grant testified, that the note was in the Globe

Bank when it was paid, and that he expected to get it up and settle it in a few days. But the plaintiffs contend that the credit, which should have been given to Grant as a witness, was with the jury, and that his conduct, according to his own statement, greatly tended to impair the confidence of a jury in his testimony. He passed the note after he had made a record that it was paid. And he exhibited it as worth half its face, $ 2000, after he told the plaintiffs that it had been paid.

But we think there is an obvious answer to these suggestions. In the first place, the embarrassed situation of Grant, Seaver & Co. at the time, would have been recollected and weighed by the jury, as in some degree accounting for his conduct, without discrediting his testimony. There was no evidence impeaching his general character for truth. His firm were hard pressed : They were dealing in immense sums, and put to their wits' end to keep up their declining and almost expiring credit. When the note was delivered to the plaintiffs by Grant, Seaver & Co., their business with the plaintiffs was very heavy ; and Grant's suggestion, that in picking out from their files notes to be given to the plaintiffs as collateral security, he looked at sums and not names, is entitled to some consideration, perhaps, although it cannot be extended to his setting the note down afterwards as worth fifty per cent. But however irreconcilable with good faith might be the conduct of Grant, the defendants produce the writing itself, and ·contend, and as it seems to us with reason, that they have not so conducted themselves as to mislead the plaintiffs in this matter ; for the note itself declared its own dishonor. The defendants could not suppose that they incurred any hazard of being called upon again for payment, by reason of the subsequent misconduct of the payees in negotiating the note. For by the terms of the note, the plaintiffs were put upon their guard. It was payable on demand, and more than eight months had elapsed after its date. There is no evidence that the defendants did any act tending to prove an agreement on their part that the note might be reissued, other than that which may be inferred from the paper itself, and the fact that it was not called for until after the failure of Grant,

Seaver & Co.   Now the defendants did not know the circum-stances of Grant, Seaver & Co. until after their failure.   The defendants did not mistrust that they were in the habit of dealing somewhat largely and confidentially.

It was urged by the plaintiffs, that the defendants were next door neighbors, daily seeing or doing business with the payees, and yet made no demand of the note.   This is true, but not very extraordinary.   It frequently happens that no time is found to do what may be done at any time ; especially if it be considered a matter which has been substantially arranged already. Now Grant expressly testified, that by the agreement the note was to be given up to the defendants ; that the matter was to be settled in a few days ; which, if true, disproves any consent of the defendants that it might be again negotiated.   The pay-ment was entered in the books of the payees — as was proved by the testimony of their clerk.   So the receipt, which was given, was corroborated by other evidence besides the testimony of Grant.   The jury could not suppose that the receipt was a fabrication antedated.

It would be for the plaintiffs to maintain their suggestion, that the defendants agreed that the payees might reissue the note after payment.   But the evidence relied on to maintain it, it seems to us, is greatly deficient.   The result is, that the defence is sustained and the plaintiffs must become nonsuit.

*Crowninshield*, for the plaintiffs.

*C. G. Loring & Goodrich*, for the defendants.